UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| David Landfair,<br><br>Plaintiff,<br><br>v.<br><br>Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC, Brent Kreke, FiStream, Inc., Blue Ridge Indemnity Company, John/Jane Does 1-5,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No.<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**Plaintiff's Original Complaint and Jury Demand**

**PARTIES**

1. The plaintiff is David Landfair, a natural person who resides and was present in New York, Kings County, for all calls in this case.

2. Plaintiff is a "person" as defined by *47 U.S.C. § 153 (39)*.

3. Valiant Auto LLC d/b/a Automotive Services Center is a Nevada corporation that can be served via its registered agent Incorp Services, Inc., 3773 Howard Hughes Pkwy, Ste 500s, Las Vegas, NV 89169-6014.

4. Mediastratx LLC, a Valiant Auto LLC's manager and direct marketing company, is a Nevada corporation that can be served via its registered agent Incorp Services, Inc., 3773 Howard Hughes Pkwy, Ste 500s, Las Vegas, NV 89169-6014.

5. Erik Rameson is a corporate officer, shareholder and the sole owner of Valiant Auto

LLC d/b/a Automotive Services Center and Mediastratx LLC.

6. Erik Rameson can be served at 5665 Plaza Drive, Ste 100, Cypress, CA 90630.

7. Black Diamond Administrative Company, LLC is an Illinois corporation with a principal place of business at 109 E 1st Street, O'Fallon, IL 62269-2127.

8. Black Diamond Administrative Company LLC can be served via its registered agent Patti L. Kreke at 9310 Pister Road, Lebanon, IL 62254.

9. Brent Kreke is a corporate officer, shareholder and an owner of Black Diamond Administrative Company LLC.

10. Brent Kreke can be served at 9310 Pister Road, Lebanon, IL 62254.

11. FiStream, Inc. is a Texas corporation with a principle place of business at 15510 Wright Brothers, Addison TX 75001.

12. Blue Ridge Indemnity Company is a Delaware that can be served via its registered agent Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Ste 104, Wilmington, DE 19810.

13. Each defendant herein is a "person" as defined by *47 U.S.C. § 153 (39)*.

14. Upon information and belief, at all relevant times, each Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

15. Upon information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

16. John/Jane Does 1-5 are other liable parties currently unknown to Plaintiff who therefore sues such Defendants by fictitious names. Each of the Defendants

designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Does Defendants when such identities become known.

## JURISDICTION AND VENUE

17. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. §1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

18. <u>Personal Jurisdiction</u>.  This Court has general personal jurisdiction over the defendant because they (i) have repeatedly placed calls to New York residents, (ii) derive revenue from New York residents, and (iii) sell goods and services to New York residents, including the plaintiff.

19. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at New York residents, including the plaintiff—occurred in this District and because the plaintiff resides in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

20. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. §227).

21. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

22. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §227(b)(1)(B).

23. The TCPA provides a private cause of action to persons who receive calls in violation of §227(b). 47 U.S.C. § 227(b)(3).

24. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. §227(c); 47 C.F.R. §64.1200(d)(1)[1].

25. The TCPA provides a private cause of action to persons who receive calls in violation of §227(c) or a regulation promulgated thereunder. 47 U.S.C. §227(c)(5).

26. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

27. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

28. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular,

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 ¶33 (2012) (footnote and internal quotation marks omitted).

29. FCC regulations "generally establish that the party on whose behalf a solicitation is

made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

30. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

31. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-952 (9th Cir. 2009).

32. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g*., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

33. Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of all Defendants in negligently,

knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA") and related regulations, thereby invading Plaintiff's privacy and causing Plaintiff other damages enumerated below.

34. This case relates to unsolicited telemarketing calls to Plaintiff to buy an extended car warranty for the benefit of all the named defendants in this case.

**Calls to Plaintiff**

35. Upon information and belief, in the period from June 27, 2019 and through and including March 8, 2021 Plaintiff received about 130 calls to his mobile telephone number \*\*\*-\*\*\*-0365 from or on behalf of Defendants soliciting Plaintiff to purchase Defendants' services.

36. Upon information and belief, Defendants provide extended car warranty services to consumers.

37. Upon information and belief, to generate sales, Defendants utilized telemarketer services provided by other co-Defends herein.

38. Upon information and belief, the subject calls came from a variety of spoofed caller IDs, contained a pre-recorded message and were initiated using an "automated telephone dialing system" (hereinafter, the "ADTS") as defined by *47 U.S.C. § 227(a)(1)*.

39. Upon information and belief, the calls had a noticeable pause and delay before the pre-recorded message began indicating the calls were initiated using an ATDS. Those calls did not identify the caller.

40. Upon information and belief, Plaintiff had never consented to receiving automated calls or calls with pre-recorded messages from any of the defendants or their agents.

41. Upon information and belief, these calls were not related to any emergency purpose as defined by *47 U.S.C. § 227(b)(1)(A)*.

42. Upon information and belief, Plaintiff never sought information about an extended warranty for a car and did not consent to the calls from any Defendants herein.

43. Upon information and belief, during all relevant times, Defendants did not possess Plaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

44. Plaintiff is not a customer of Defendants' services and has never provided any personal information, including his cellular telephone number, to Defendant for any purpose whatsoever. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

45. Upon information and belief, on or about August 18, 2020 Plaintiff engaged with telemarketers to learn their identity and was transferred to a live representative who sold Plaintiff a vehicle protection policy under Service Contract #WASC103918. The same day Plaintiff received an email containing a confirmation of and agreement for the Service Contract #WASC103918, and the names of Defendants indicating that the policy was for each of their benefit and on their behalf.

46. Upon information and belief, despite selling a Service Contract #WASC103918 to Plaintiff, and never obtaining a consent to contact Plaintiff with future calls unrelated

to the Service Contract #WASC103918, Defendants continued contacting Plaintiff with new offerings to sell the same type of car warranty to Plaintiff on the same vehicle.

47. Upon information and belief, Defendants did not have an internal do not call policy, did not place Plaintiff on an internal do not call policy, in violation of 47 CFR 64.1200(d).

48. Upon information and belief, at all times relevant to the allegations set forth herein, Plaintiff's cell phone number \*\*\*-\*\*\*-0365 has been placed on the state and federal "Do Not Call" Registries. But despite that, the telemarketing calls were placed to Plaintiff by and on behalf all Defendants herein.

49. Upon information and belief, Plaintiff has limited data storage capacity on his cellular telephone. Incoming calls from the defendants consumed part of this capacity.

50. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

51. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

52. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

53. Plaintiff has been harmed, injured, and damages by the unwanted calls including, but not limited to:

    (1) reduced device storage space;

    (2) reduced data plan usage;

    (3) lost time tending to unwanted calls;

    (4) decreased cell phone battery life and usage as well as the need for more frequent re-charges of the battery;

    (5) decreased enjoyment and usage of Plaintiff's cell phone;

    (6) annoyance;

    (7) frustration, and

    (8) anger.

**Defendants Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC and Brent Kreke Knowingly and Willfully Violated Telemarketing Regulations.**

54. Upon information and belief, Defendants Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC and Brent Kreke knowingly violated the TCPA by initiating automated calls with pre-recorded messages to Plaintiff.

55. Upon information and belief, defendants Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC and Brent Kreke did not have a written do-not-call policy while making calls to Plaintiff.

56. Upon information and belief, defendants Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC and Brent Kreke did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

57. Upon information and belief, at the time of the calls alleged in this Complaint Defendants Valiant Auto LLC d/b/a/ Automotive Services Center, Mediastratx LLC, Erik Rameson, Black Diamond Administrative Company LLC and Brent Kreke did not provide Plaintiff with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

**Plaintiff's cell phone is a residential number**

58. Upon information and belief, the calls were made to Plaintiff's cellular phone \*\*\*-\*\*\*-0365 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phone at his residents and has not done so in many years. Thus, he primarily relies on his cellular phone to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, as a timer for cooking and other activities, to send and receive emails and text messages, and read books and news. Plaintiff's cell phone registered in his personal name, he pays the cell phone bills from his personal bank and credit card accounts, and the phone is not primarily used for any business purpose.

59. All actions described herein were in violation of the TCPA.

**FIRST CLAIM FOR RELIEF**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

60. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

61. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. §227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent.

62. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

64. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (As Against All Defendants)

65. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. §64.1200(d)(1); [2]

    b    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. §64.1200(d)(2);[3] and,

    c    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. §64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

67. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. §227(c)(5)(B).

68. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. §227(c)(5).

69. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff David Landfair prays for judgment against Defendants jointly and severally as follows:

    A.    Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendants violate the TCPA;

    C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 130 calls.

    E.    An award of damages to Plaintiff as allowed by law under the TCPA;

   F. An award of interest, costs and attorneys' fees to Plaintiff as allowed by law and equity;

   G. Such further relief as the Court deems necessary, just, and proper.

Dated: Brooklyn, New York
    June 25, 2021

              Respectfully submitted,

              _____
              Galina Feldsherova (GF-7882)
              KOPELEVICH & FELDSHEROVA, P.C.
              Attorneys for Plaintiff
              241 37th St., Ste B439
              Brooklyn, NY 11232
              718-332-0577